

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 30, 2025.**

SHAD M. ROBINSON
UNITED STATES BANKRUPTCY JUDGE

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-10768-smr |
| | § | |
| **Los Trece Texas, LLC,** | § | |
| | § | |
| Debtor. | § | **Chapter 11 Subchapter V** |

---

### MEMORANDUM OPINION GRANTING
### DARRIN AND JAYME ST. AMA'S MOTION TO DISMISS
### (Relates to ECF No. 94)

Before the Court is the *Motion to Dismiss or Convert Case* (the "Motion to Dismiss") filed by Creditors Darrin and Jayme St. Ama (together, the "St. Amas")[1] and the Debtor's Response thereto (the "Response").[2]

On February 21, 2025, the Court held a live, in-person evidentiary hearing on the Motion to Dismiss (the "Hearing"). After considering the Motion to Dismiss, the Response, the witness testimony at the Hearing, the exhibits that were offered and admitted at the Hearing, the procedural

---

[1] ECF No. 94.
[2] ECF No. 109.

1

history of this case, the arguments of counsel, and for the reasons set forth below,[3] the Court will grant the Motion to Dismiss under 11 U.S.C. § 1112(b)(1) and (b)(4) and will dismiss the case with prejudice.[4]

## I.     JURISDICTION AND VENUE

The Court finds that it has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it involves matters concerning the administration of the estate and the Court's authority to administer bankruptcy cases.

The Court has authority to adjudicate this matter pursuant to the District Court's Standing Order of Reference. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. This matter involves dismissal of a pending bankruptcy case, arises solely under the Bankruptcy Code, and is within the Court's authority and jurisdiction pursuant to the Supreme Court's ruling in *Wellness Int'l Network, Ltd. v. Sharif (In re Sharif)*, 575 U.S. 665 (2015).[5]

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court makes its Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.

---

[3] This is the Court's memorandum opinion outlining the Court's ruling on March 7, 2025, wherein the Court dismissed this case with prejudice for 180 days from March 7, 2025. To the extent of an irreconcilable conflict between the Court's oral ruling and this memorandum opinion, this memorandum opinion shall control.

[4] All statutory citations and references are to Title 11 of the United States Code, unless otherwise noted.

[5] *See also In re Delta AG Group, LLC*, 596 B.R. 186 (Bankr. W.D. La. 2019). A proceeding for dismissal of a bankruptcy case under § 1112(b) can only arise in a Chapter 11 case; therefore, bankruptcy judges have constitutional authority to enter final orders on such proceedings. *In re Irasel Sand, LLC*, 569 B.R. 433, 438 (Bankr. S.D. Tex. 2017) (quoting *In re Lake Michigan Beach Pottawattamie Resort, LLC*, 547 B.R. 899, 902-03 (Bankr. N.D. Ill. 2016)).

### III.    BACKGROUND FACTS

Los Trece Texas, LLC (the "Debtor") operates a wild west themed attraction located at 3901 Hwy. 84-183 E., Early, Texas, commonly referred to as "Los Trece".[6] On March 7, 2023, one of the Debtor's principals, Ms. Carrie Wells ("Ms. Wells"), agreed to purchase the Los Trece business assets—including the underlying real estate—from the St. Amas for $2,047,013.00.[7]

To acquire the real and personal property used to operate Los Trece, the Debtor executed a promissory note dated March 7, 2023 in the original principal amount of $1,812,013.00[8] payable to the St. Amas (the "Note").[9] To secure the Note, the St. Amas recorded a deed of trust (the "Deed of Trust") against the real property where the Los Trece business was operated (the "Real Property").[10] The Deed of Trust was signed by Ms. Wells, Mr. Christopher Chitsey ("Mr. Chitsey"), and Mr. Kacy Wells ("Mr. Wells"), each of whom was identified as a member of the Debtor.[11]

The Debtor started making monthly payments on the Note in September 2023, but in the late spring of 2024, the Debtor requested that the St. Amas renegotiate the terms of the Note.[12] The St. Amas apparently did not agree to renegotiate the terms of the Note and instead posted the Real Property for a June 4, 2024 foreclosure sale.[13]

On May 29, 2024, the Debtor filed suit against the St. Amas in state district court in Brown County, Texas (the "Brown County State District Court"), asserting claims against the St. Amas for breach of contract, negligent misrepresentation, negligence, common law fraud, statutory

---

[6] ECF No. 22 at 2.
[7] ECF No. 94 at 5; *see also* ECF No. 113 at 1-2.
[8] ECF No. 113 at 1-2; ECF No. 94 at Exhibit 3; Proof of Claim No. 7-1.
[9] The general terms of the Note were set forth in the Stipulation of Facts at ECF No. 113 at 2.
[10] ECF No. 113 at 2; ECF No. 39 at 7; Proof of Claim No. 7-1.
[11] ECF No. 94 at Exhibit 4; *see also* St. Amas Exhibit 4 admitted at the Hearing.
[12] ECF No. 113 at 2.
[13] ECF No. 113 at 2.

fraud, and Texas Deceptive Trade Practices Act violations.[14] The state court case was styled and numbered *Los Trece Texas, LLC*, *Plaintiff, vs. Darren B. St. Ama and Jayme L. St. Ama, Defendants*, Cause No. CV2405166, previously pending in the 35th Judicial District Court in Brown County, Texas (the "State Court Lawsuit").[15] The Debtor requested a temporary restraining order as part of the State Court Lawsuit.[16] On May 31, 2024, a temporary restraining order was entered in the State Court Lawsuit and a hearing on further relief was set for June 25, 2024.[17] The Brown County State District Court also authorized the St. Amas to post the Real Property for a July 2024 foreclosure.[18] On June 25, 2024, the Brown County State District Court conducted a follow-up hearing and neither Ms. Wells nor any other representative of the Debtor appeared.[19]

On July 1, 2024, Debtor filed a voluntary petition for relief under Chapter 11 Subchapter V (the "Petition Date").[20] The parties agree that Debtor filed this bankruptcy case to prevent the St. Amas from foreclosing on the Real Property.[21]

On July 26, 2024, the Debtor filed its Schedules and Statement of Financial Affairs (the "Original Schedules and SOFA").[22] The Original Schedules and SOFA do not indicate that the Debtor possessed any tiny homes[23] or recreational vehicles as of the Petition Date. The Original Schedules and SOFA also do not indicate that the Debtor leased out any tiny homes or recreational vehicles. The Original Schedules and SOFA list Alan Oliverio ("Oliverio")[24] and Paul Robbins

---

[14] *See* Adv. Proc. No. 24-01068, ECF No. 2.
[15] Adv. Proc. No. 24-01068, ECF No. 2.
[16] ECF No. 113 at 3; *see also* Adv. Proc. No. 24-01068, ECF No. 2 at 15-20.
[17] ECF No. 113 at 3.
[18] ECF No. 113 at 3.
[19] ECF No. 113 at 3.
[20] ECF No. 1.
[21] ECF No. 113 at 1-3.
[22] ECF No. 39.  The Original Schedules and SOFA were signed by Carrie Wells under penalty of perjury.
[23] Tiny homes are habitable structures. ECF No. 113 at 3. Certain tiny homes were located on the Real Property. ECF No. 113 at 3.
[24] The parties stipulate that Alan Oliverio is an "investor" who has an unperfected second lien on one of the tiny homes "for build out." ECF No. 113 at 9.

4

("Robbins")[25] as unsecured creditors.[26] The Original Schedules and SOFA value the Debtor's interest in the Real Property at $1,152,570.00 as of the Petition Date.[27]

On August 14, 2024, the Debtor filed a Notice of Removal removing the State Court Lawsuit to the Northern District of Texas, Dallas Division Bankruptcy Court (the "Northern District of Texas Bankruptcy Court") under 28 U.S.C. §§ 1441(a) and 1452(a).[28] On November 5, 2024, the Northern District of Texas Bankruptcy Court entered its Order Granting Motion to Transfer Venue to Western District of Texas, thereby transferring the State Court Lawsuit to this Court where it remains pending as adversary proceeding number 24-01068 (the "Adversary Proceeding").[29] On January 30, 2025, Debtor filed an Amended Complaint in the Adversary Proceeding asserting claims against the St. Amas for fraud in a real estate transaction and tortious interference with business relations, as well as objecting to the St. Amas' claim.[30] The Adversary Proceeding remains pending before this Court.[31]

On September 23, 2024, Debtor filed its Amended Schedules and Summary (the "Amended Schedules").[32] In the Amended Schedules, Debtor lowered its valuation of the Real Property from $1,152,570.00 to $600,000.00.[33] The Amended Schedules still did not disclose any possession, ownership, or leases of any tiny homes or recreational vehicles.[34]

On September 30, 2024, the Debtor filed its original Subchapter V Plan (the "Original

---

[25] The parties stipulate that Paul Robbins has an unperfected lien on another one of the Debtor's tiny homes. ECF No. 113 at 9.
[26] ECF No. 39 at 16.
[27] ECF No. 39 at 7.
[28] Adv. Proc. No. 24-01068, ECF No. 1 at 2.
[29] Adv. Proc. No. 24-01068, ECF No. 13.
[30] Adv. Proc. No. 24-01068, ECF No. 18.
[31] Given the Court's ruling herein, the Court will enter a separate order *sua sponte* dismissing Adversary Proceeding No. 24-01068.
[32] ECF No. 63.
[33] ECF No. 63 at 6. The Debtor agrees that it has no appraisals of the Real Property. *See* ECF No. 113 at 4.
[34] The Debtor subsequently amended its schedules to include this property. *See* ECF No. 111.

Plan")[35] Consistent with the Amended Schedules, the Original Plan valued the Real Property at $600,000.00.[36] The Original Plan projected that Debtor's monthly revenue would increase substantially and continue to trend upwards during the Original Plan's term.[37] The Original Plan provided that no executory contracts or unexpired leases would be assumed.[38] The liquidation analysis attached to the Original Plan did not include any valuation for tiny homes or recreational vehicles.[39] The terms of the Original Plan also did not require Ms. Wells, Mr. Wells, Mr. Chitsey, KC REI, or any other person or entity affiliated with Debtor to provide financial support to the Debtor to perform its obligations under the Original Plan.[40]

The Debtor proceeded to solicit votes for the Original Plan and a confirmation hearing was scheduled for January 16, 2025.[41]  The St. Amas voted against the Original Plan and the Subchapter V Trustee filed an objection to confirmation.[42] First, the Subchapter V Trustee stated that the Debtor's projections did not appear consistent with post-petition operations.[43] Second, the Subchapter V Trustee noted that there was no other outside source of funding and no cash contribution outside of Debtor's income from post-petition operations.[44] Third, the Subchapter V Trustee observed that the Original Plan did not specify that the Debtor's property would revest to Debtor once all payments were made only if the Original Plan was confirmed under § 1191(b).[45]

---

[35] ECF No. 68.
[36] ECF No. 113 at 6.
[37] ECF No. 113 at 6.
[38] ECF No. 113 at 6.
[39] ECF No. 113 at 6.
[40] ECF No. 113 at 6.
[41] ECF No. 113 at 3.
[42] ECF No. 113 at 3-4; ECF No. 83.
[43] ECF No. 83 at 8.
[44] ECF No. 83 at 8-9.
[45] ECF No. 83 at 9.

On January 8, 2025, Debtor's counsel acknowledged to the Court that the Original Plan was not confirmable and that Debtor would need to file an amended Subchapter V Plan.[46] On January 14, 2025, the Court entered an amended scheduling order (the "Amended Scheduling Order") setting a deadline for Debtor to file an amended plan, setting other confirmation deadlines, and setting a confirmation hearing for March 19, 2025.[47]

On January 24, 2025, Debtor filed an amended Subchapter V Plan (the "Amended Plan").[48] The Amended Plan reduced the amount available to pay creditors by $91,086.00.[49] Simultaneously with the filing of the Amended Plan, Debtor filed a motion for a scheduling conference and requested that the plan confirmation hearing occur either with, or after completion of, the trial in the Adversary Proceeding.[50] On January 28, 2025, the St. Amas filed the Motion to Dismiss.[51] The Court conducted a status conference on January 31, 2025. At the status conference, the Court advised the parties that it would follow the Amended Scheduling Order, set a hearing on the Motion to Dismiss, and likely rule on the Motion to Dismiss before the confirmation hearing.

On February 3, 2025, the Court entered an order setting a live, in-person evidentiary hearing on the Motion to Dismiss for February 21, 2025.[52] The order imposed a deadline of February 18, 2025 to respond to the Motion to Dismiss.[53] On February 17, 2025, Debtor filed a Response to the Motion to Dismiss.[54] On February 18, 2025, Debtor filed its Amended

---

[46] ECF No. 113 at 4.
[47] ECF No. 85.
[48] ECF No. 89.
[49] ECF No. 113 at 6.
[50] ECF No. 91.
[51] ECF No. 94.
[52] ECF No. 101.
[53] ECF No. 101 at 2.
[54] ECF No. 109.

Schedules A/B, D and E/F.[55] On February 20, 2025, Debtor and the St. Amas filed their *Stipulated Facts* on the Motion to Dismiss.[56]

The Debtor's financials, as demonstrated through its monthly operating reports, reveal continuing diminution or loss to the estate. See Table 1 below:

| Table 1: Summary of Debtor's Monthly Operating Reports from July 2024 to December 2024 | |
|---|---|
| **Monthly Operating Report (ECF No.)** | **Net Cash Flow (Loss)** |
| July 2024 (ECF No. 53) | $3,409.57 |
| August 2024 (ECF No. 57) | ($3,006.18) |
| September 2024 (ECF No. 79) | ($5,686.93) |
| October 2024 (ECF No. 80) | ($8,930.72) |
| November 2024 (ECF No. 82) | $870.96 |
| December 2024 (ECF No. 88) | ($2,761.91) |

According to the December 2024 monthly operating report, Debtor had negative $10,821.67 in cash on hand and $12,338.56 in unpaid bills at the end of December.[57] Debtor generally has not met the monthly projected cash receipts set forth in the monthly operating reports.[58] Debtor admits that it has not been profitable.[59] The parties agree that the St. Amas have received no payments from Debtor since June 1, 2024.[60] The parties further agree that Debtor has made no payments to

---

[55] ECF No. 111.
[56] ECF No. 113.
[57] ECF No. 113 at 6; ECF No. 88 at 2.
[58] ECF No. 113 at 5-6.
[59] ECF No. 113 at 6.
[60] ECF No. 113 at 3.

MC Bank, the St. Amas, Paul Sessler ("Sessler"), Paul Robbins,[61] or Alan Oliverio[62] since the Petition Date.[63]

Notwithstanding the representations set forth in the Original Schedules and SOFA, and the Amended Schedules that were each filed by the Debtor under penalty of perjury, the parties agree that before and after the Petition Date, the Debtor has generated some revenue by leasing spaces in the RV park, leasing Tiny Homes (the "Tiny Homes"), and leasing at least one other habitable structure located on the Real Property.[64] The parties further agree that one of the Debtor's former employees lives in a recreational vehicle (the "RV") that is being purchased by Debtor from Sessler.[65] The parties further stipulate that Sessler holds title to the RV and will only transfer title to Debtor upon completion of Debtor's payment obligations to Sessler.[66]

## IV.   CONTENTIONS OF THE PARTIES

The St. Amas allege that this case is primarily a two-party dispute between them and a dishonest Debtor.[67] The St. Amas assert that Debtor (1) has failed to make honest disclosures in its bankruptcy filings, such as improperly scheduling secured creditors as unsecured;[68] (2) has filed monthly operating reports reflecting no chance of reorganization; (3) has filed the Original Plan that the Debtor later admitted was not confirmable; (4) has filed an unconfirmable Amended Plan; and (5) has failed to adequately maintain the Real Property since the bankruptcy case was filed.[69]

---

[61] The estimated monthly payment to Paul Robbins is between $1,400 and $1,600.  ECF No. 113 at 9-11.
[62] The estimated monthly payment to Alan Oliverio is approximately $700.  ECF No. 113 at 9-10.
[63] ECF No. 113 at 9-10. The debt owed to MC Bank is also secured by the Real Property. ECF No. 113 at 11.
[64] ECF No. 113 at 3. At a minimum, this short-term leasing was done via Airbnb and Campspot.
[65] ECF No. 113 at 9.
[66] ECF No. 113 at 9.
[67] ECF No. 94 at 1.
[68] The Original Schedules list Oliverio, Robbins, and Sessler as unsecured creditors. However, the St. Amas allege that each creditor is secured in property including the previously undisclosed tiny homes and the RV.
[69] ECF No. 94 at 2.

In short, the St. Amas allege that Debtor has not acted in good faith and that the Amended Plan does not have a reasonable likelihood of reorganization.[70]

In its Response, Debtor references the "significant amount of animosity" between Debtor and the St. Amas.[71] Debtor denies that this bankruptcy is a two-party dispute, given that there are other creditors.[72] Debtor alleges that unlike most two-party disputes, in this case there is no attempt to impede or relitigate a matter that was decided unfavorably in state court.[73] Debtor states that its ability to operate the business has suffered because the St. Amas have been "trash-talking" the Debtor in the local community which has impacted Debtor's business operations.[74] Debtor also alleges that the Real Property is in better condition now than it was at the time of purchase.[75]

Debtor asserts that there is serious doubt as to whether Debtor even owes any money to the St. Amas.[76] Debtor requests that the Adversary Proceeding be allowed to continue such that the Court may resolve the "fundamental question" of the St. Amas' standing as a creditor.[77] In response to the St. Amas' allegation that Debtor disingenuously amended its plan, Debtor states that plan amendments are part of the natural processes within Subchapter V cases, as circumstances change.[78]

## V.  ISSUES PRESENTED

The first issue is whether there is "cause" that requires the Court to dismiss or convert under § 1112(b)(1) and (4).

---

[70] ECF No. 94 at 2.
[71] ECF No. 109 at 9.
[72] ECF No. 109 at 10.
[73] ECF No. 109 at 10.
[74] ECF No. 109 at 9.
[75] ECF No. 109 at 9.
[76] ECF No. 109 at 10.
[77] ECF No. 109 at 10.
[78] ECF No. 109 at 10.

The second issue is whether the Debtor has satisfied its burden to identify and prove "unusual circumstances," along with the other requirements of the "unusual circumstances" exception set forth in § 1112(b)(2), such that dismissal or conversion of the case is not in the best interest of creditors and the estate.

The third issue is whether the Debtor's actions constituted "bad faith" which would provide additional cause for dismissal and would warrant dismissal with prejudice for some period of time.

## VI.    HOLDING

First, the Court FINDS that cause exists to dismiss this case because there is substantial or continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation under § 1112(b)(4)(A).

Second, the Court FINDS that there are no unusual circumstances identified and proven by the Debtor under § 1112(b)(2) which would establish that dismissal or conversion of the case is not in the best interest of creditors and the estate.

Third, the Court FINDS that there is bad faith present. The finding of bad faith constitutes additional grounds for dismissal under §§ 1112(b)(4) and 1129(a)(3) and warrants dismissal with prejudice for 180 days.

## VII.    LEGAL ANALYSIS

### A.    Introduction

Section 1112(b) applies to all debtors under Chapter 11 (the "Bankruptcy Code").[79] Section 1112(b)(1) of the Bankruptcy Code provides that the Court "shall" dismiss or convert a case for cause, whichever is in the best interest of creditors and the estate, unless the court determines that appointment of a trustee or an examiner under § 1104 is in the best interests of the

---

[79] *In re Irasel Sand, LLC*, 569 B.R. 433, 438 (Bankr. S.D. Tex. 2017).

estate.[80] The Bankruptcy Code defines cause with a non-exhaustive list that includes substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.[81]

**B.      Section 1112(b)(3) demands that the Court set a hearing within thirty (30) days of the filing of a motion to dismiss.**

A request for dismissal or conversion of a bankruptcy case can be initiated by any "party in interest"[82] filing a motion asserting that cause exists to dismiss or convert the bankruptcy case under § 1112(b)(4).[83] Generally, the court shall commence a hearing on a motion to dismiss not later than thirty (30) days after the motion is filed and make a decision not later than fifteen (15) days after commencing the hearing, unless the "movant expressly consents to a continuance of the hearing for a specific period of time" or "compelling circumstances" prevent the court from commencing the hearing within such time limits.[84]

**C.      Cause is determined through the totality of the circumstances under § 1112(b)(4).**

The burden is on the movant to show that cause exists under § 1112(b)(4) by a preponderance of the evidence.[85] The Bankruptcy Code defines "cause" for purposes of § 1112(b) with an enumerated list. However, the list set forth in § 1112(b)(4) is not exhaustive and courts may consider other grounds based on the specific facts present in each case.[86] Cause is determined

---

[80] 11 U.S.C. § 1112.

[81] 11 U.S.C. § 1112(b)(4).

[82] *See* 11 U.S.C. § 1109(b) for the definition of a party in interest. The United States Trustee is also a party in interest under 11 U.S.C. §§ 307 and 103(a). Alternatively, the bankruptcy court has the authority to *sua sponte* dismiss or convert a bankruptcy case. *In re Irasel Sand, LLC*, 569 B.R. 433, 439 (Bankr. S.D. Tex. 2017).

[83] *In re Irasel Sand, LLC*, 569 B.R. 433, 439 (Bankr. S.D. Tex. 2017) (citing 11 U.S.C. § 1112(b)).

[84] *See generally In re Turkey Leg Hut & Co. LLC*, 665 B.R. 129, 137 (Bankr. S.D. Tex. 2024); 11 U.S.C. § 1112(b)(3). Compelling circumstances include things such as a busy court docket, complex legal issues, extensive evidentiary issues, reduced staffing, courthouse closures, a serious illness, a pandemic, and other similar types of compelling situations as determined by the bankruptcy court.

[85] *In re TMT Procurement Corp.*, 534 B.R. 912, 918 (Bankr. S.D. Tex. 2015) (citing *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994)).

[86] *In re Irasel Sand, LLC*, 569 B.R. 433, 439 (Bankr. S.D. Tex. 2017) (citing *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)).

by a totality of the circumstances.[87] The § 1112 inquiry is "case-specific, focusing on the circumstances of each debtor."[88]

**D.      If cause is shown by the movant, the Court, after notice and hearing, "shall" dismiss the bankruptcy case, convert the bankruptcy case to chapter 7, or appoint a trustee or examiner.**

If the movant shows by a preponderance of the evidence that cause exists under § 1112(b)(4), the statute provides little discretion and makes it clear that the court *shall* dismiss or convert a case to Chapter 7, whichever is in the best interests of creditors and the estate, unless the court determines that appointment of a trustee or examiner is in the best interests of creditors and the estate.[89] The Fifth Circuit has recognized the "mandatory terms" of § 1112, and has distinguished this statutory provision from the "permissive" language in a Chapter 7 context.[90]

**E.      In a Subchapter V case, appointment of a Chapter 11 trustee or examiner is not permitted.**

As the Debtor elected to proceed under Subchapter V, the appointment of a Chapter 11 trustee or examiner under § 1104(a) is not an available option, as § 1181 makes § 1104 inapplicable to Subchapter V cases. Accordingly, after cause to convert or dismiss has been shown in a Subchapter V case, the Court need only determine whether conversion or dismissal is in the best interest of creditors and the estate.

The bankruptcy courts have "wide" discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate.[91] The phrase "best interests of creditors

---

[87] *In re Assadi*, No. 1:20-CV-998-LY, 2021 WL 917489, at *4 (W.D. Tex. 2021) (citing *In re T-H New Orleans, L.P.*, 116 F.3d 790, 802 (5th Cir. 1997)).

[88] *Id.* at *3 (citing *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 371-72 (5th Cir. 1987) (en banc)).

[89] 11 U.S.C. § 1112(b)(1).

[90] *In re Karcredit, LLC*, No. 21-30649, 2022 WL 4103265, at *5 (5th Cir. 2022) (citing *In re Krueger*, 812 F.3d 365, 367 (5th Cir. 2016)).

[91] *In re Koerner*, 800 F.2d 1358, 1367 (5th Cir. 1986); *see In re Ozcelebi*, 639 B.R. 365, 425 (Bankr. S.D. Tex. 2022).

and the estate" is undefined in the Bankruptcy Code.[92] When parties disagree on conversion or dismissal, the court chooses the alternative that would most benefit the estate as a whole.[93]

In deciding whether to convert or dismiss, an essential question is what assets would be available for a Chapter 7 trustee to liquidate and administer.[94] Additionally, conversion may be appropriate if the court determines a disinterested professional should review the debtor's finances and operations or investigate any questionable actions.[95] Conversion is not appropriate if there is nothing of substance or value for a Chapter 7 trustee to liquidate and administer.[96]

### F. The Debtor has an opportunity to establish that § 1112(b)(2) applies as an exception to conversion or dismissal.

Even if the movant satisfies its burden to show that cause for conversion or dismissal exists under § 1112(b)(4), section 1112(b)(2) provides an exception to mandatory conversion or dismissal. Section 1112(b)(2) provides the debtor (or any another party in interest) an opportunity to prove to the court that conversion or dismissal is not in the best interest of creditors and the estate. Section 1112(b)(2) requires the debtor (or any another party in interest) to:

1) specifically identify and prove unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate;

2) prove that there is a reasonable likelihood that a plan will be confirmed in accordance with the timeframes set forth in §§ 1121(e) and 1129(e), or if these statutes do not apply, within a reasonable time;

3) prove that the alleged "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate under § 1112(b)(4)(A);

---

[92] *In re Fleetstar LLC*, 614 B.R. 767, 781 (Bankr. E.D. La. 2020).
[93] *Id.* (citing *In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001)).
[94] *Id.* (citing *In re Green Box NA Green Bay, LLC*, 579 B.R. 504, 511 (Bankr. E.D. Wis. 2017)).
[95] *See In re Fleetstar LLC*, 614 B.R. 767, 788 (Bankr. E.D. La. 2020).
[96] *See In re Fleetstar LLC*, 614 B.R. 767, 788 (Bankr. E.D. La. 2020) (finding that conversion was supported by the ability of the Chapter 7 trustee to reach assets for the benefit of creditors, to maximize the estate's value, and to protect the interests of creditors).

4)      prove that there is reasonable justification or excuse for a debtor's act or omission that constitutes cause; and

5)      prove that the act or omission constituting cause can be cured within a reasonable time.[97]

The debtor (or any another party in interest) must prove all of the above by a preponderance of the evidence[98] to avoid mandatory dismissal or conversion.[99]

The statute does not define "unusual circumstances," but courts have held that bankruptcy courts have significant discretion in finding unusual circumstances.[100] This inquiry is "necessarily fact intensive."[101] This Court finds that by using the term "unusual circumstances," the statute intends this exception to apply to those "conditions that are not common in most Chapter 11 cases"[102] such as a hurricane[103] or a fire.[104] Unusual circumstances have also been found where a debtor experienced an unexpected loss of a key customer yet the debtor's creditors continued to deal with the debtor, or where a debtor proposed to pay all creditors in full through its plan.[105] On the other hand, when a debtor's circumstances are "encountered by the typical debtor operating in a Chapter 11 proceeding" then unusual circumstances are not present.[106]

### G.      The Court finds that Debtor's bankruptcy case should be dismissed.

---

[97] *In re Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019) (citing *In re Delta AG Grp., LLC*, 596 B.R. 186, 197 (Bankr. W.D. La. 2019)).

[98] *In re Delta AG Grp., LLC*, 596 B.R. 186, 194 (Bankr. W.D. La. 2019) (discussing the burden-shifting scheme after the movant shows cause to dismiss or convert by a preponderance of the evidence).

[99] *See In re Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019) (citing *In re Delta AG Grp., LLC*, 596 B.R. 186, 197).

[100] *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 495-96 (Bankr. S.D. Tex. 2013) (citing *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D. N.Y. 2007)).

[101] *Id.*

[102] *In re Delta AG Grp., LLC*, 596 B.R. 186, 197 (citing *In re Aurora Memory Care,* 589 B.R. 631, 642 (Bankr. N.D. Ill. 2018)).

[103] *See In re Hyperion Found., Inc.*, No. 08-51288-NPO, 2009 WL 2477392, at *5, *7 (Bankr. S.D. Miss. 2009) (finding unusual circumstances after Hurricane Katrina).

[104] S*ee In re Adams*, 218 B.R. 597, 601-602 (Bankr. D. Kan. 1998) (in the context of modification to a consummated plan).

[105] *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 496 (citing *In re Pittsfield Weaving Co.*, 393 B.R. 271, 275 (Bankr. D. N.H. 2008); *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D. N.M. 2008)).

[106] *In re Delta AG Grp., LLC*, 596 B.R. 186, 197 (citing *In re Aurora Memory Care,* 589 B.R. 631, 642).

After analyzing the evidence and arguments in this case and adhering to the requirements set forth in § 1112(b) outlined above, the Court finds that the St. Amas have satisfied their burden to show cause under § 1112(b)(4), that Debtor has failed to provide evidence supporting the application of the exception in § 1112(b), that Debtor's case should be dismissed under § 1112(b)(1) rather than converted, and that the dismissal should be with prejudice to refiling for 180 days.

> ### 1. The Court finds that there is substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation under § 1112(b)(4)(A).

"Cause" includes substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation.[107] Substantial or continuing loss and absence of a reasonable likelihood of rehabilitation have been interpreted as two separate requirements within this provision; a movant must demonstrate both to reach dismissal.[108] Here, Debtor's "woeful financial performance and poor financial condition" support a finding that there is a substantial or continuing loss to the estate and no likelihood of a successful rehabilitation.[109] Loss to the estate may be substantial or continuing; both are not necessary to satisfy this element.[110] Loss is substantial when sufficiently large enough to "materially negatively impact the bankruptcy estate and interest of creditors."[111] Loss is continuing or ongoing when a persistent issue arises, such as

---

[107] 11 U.S.C. § 1112(b)(4)(A).

[108] *See In re TMT Procurement Corp.*, 534 B.R. 912, 918 (citing *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 61 (6th Cir. BAP 2013)); *see also In re M.A.R. Designs & Constr., Inc.*, 653 B.R. 843, 855 (Bankr. S.D. Tex. 2023); *In re Hyperion Found., Inc.*, No. 08-51288-NPO, 2009 WL 2477392, at *4 (citing *Norton Bankruptcy Law and Practice 2d* § 82:4 (2007)).

[109] *In re Irasel Sand, LLC*, 569 B.R. 433, 440.

[110] *In re TMT Procurement Corp.*, 534 B.R. 912, 918 (citing 7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014)).

[111] *In re Ozcelebi,* 639 B.R. 365, 384 (Bankr. S.D. Tex 2022); *In re TMT Procurement Corp.*, 534 B.R. 912, 918 (citing 7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014)).

negative cash flow.[112] When examining evidence under this element, courts should look beyond financial statements and fully evaluate the "present condition of the estate."[113]

Negative cash flow or declining asset values both demonstrate cause to dismiss or convert.[114] Negative cash flow alone constitutes sufficient cause to dismiss a bankruptcy case.[115] From August 2024 to January 2025, Debtor produced four monthly operating reports with deeply negative net cash flows.[116] Monthly operating reports are the "life blood" of Chapter 11; they are an indication of a debtor's post-petition operations and are necessary to keep creditors apprised of such.[117]

Present diminution of the estate is also clear—the estate is being diminished by continued attorneys' fees and administrative expenses despite no significant incoming revenue. Debtor has continually failed to generate revenues which would be adequate to pay its obligations.

According to Debtor's own schedules, the Real Property has decreased substantially in value. The Amended Schedules value the Real Property at $600,000.00 while the Original Schedules provided a value of $1,152,570.00.[118] The value of the Real Property is not stable and continues to diminish through operational losses.[119]

---

[112] *In re M.A.R. Designs & Constr., Inc.*, 653 B.R. 843, 856 (citing *In re Ozcelebi*, 639 B.R. 365, 385).

[113] *In re Irasel Sand, LLC*, 569 B.R. 433, 441 (citing *In re Moore Constr. Inc.*, 206 B.R. 436, 437-38 (Bankr. N.D. Tex. 1997)).

[114] *In re TMT Procurement Corp.*, 534 B.R. 912, 918 (citing *In re Paterno*, 511 B.R. 62, 66 (Bankr. M.D. N.C. 2014)).

[115] *In re TMT Procurement Corp.*, 534 B.R. 912, 918 (citing *In re Miell*, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009)).

[116] *See* ECF No. 88 at 2 (with negative $2,761.91 in net cash flow for December 2024); ECF No. 80 at 2 (with negative $8,930.72 in net cash flow for October 2024); ECF No. 79 at 2 (with negative $5,686.93 in net cash flow for September 2024); ECF No. 57 at 2 (with negative $3,006.18 in net cash flow for August 2024).

[117] *In re Hyperion Found., Inc.*, No. 08-51288-NPO, 2009 WL 2477392, at *6 (citing *In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991)).

[118] *Compare* ECF No. 111 at 6, *with* ECF No. 39 at 7.

[119] *See In re TMT Procurement Corp.*, 534 B.R. 912, 920 (citing *In re Gabriel Techs. Corp.*, No. 13-CV-03061-WHO, 2013 WL 4672785, at *3 (Bankr. N.D. Cal. 2013)).

Rehabilitation signifies something more than reorganization; it is a simple question of whether the debtor's business prospects "justify continuance of the reorganization effort."[120] While the Debtor does have a business to rehabilitate, the Court finds that the contingencies that would fund a plan are "too remote to be called reasonably likely."[121] Courts have held that a reasonable likelihood of rehabilitation is absent when (1) there are no sources offering to lend essential capital to the debtor; (2) the debtor is generating no profits and the reorganization depends upon speculative outcomes; or (3) the debtor lacks a reasonably certain source of income.[122] When a debtor possesses no equity in its property, due to a creditor holding a lien exceeding the property's value, the debtor's case can be dismissed under this requirement.[123]

The Amended Plan lists the source of funds to support the Amended Plan as (1) all monies held by Debtor on the Effective Date; and (2) all monies earned by Debtor over the life of the Amended Plan.[124] The Amended Plan leaves blank what it proposes to pay under § 1190.[125] At the Hearing, Ms. Wells testified that she would inject capital into the Debtor, yet she did not disclose the amount or source of these apparent funds and she provided no written evidence in support.

Debtor has made no payments to the majority of creditors (MC Bank, the St. Amas, Sessler, Robbins, or Oliverio) since filing for bankruptcy. The Debtor's Amended Schedules list the St. Amas' debt on the Real Property at $1,800,000.00.[126] However, the Amended Schedules value the

---

[120] *In re TMT Procurement Corp.*, 534 B.R. 912, 920 (citing *In re Westgate Properties, Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010); *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009)).
[121] *In re Traxcell Techs., LLC*, 657 B.R. 453, 463 (Bankr. W.D. Tex. 2024).
[122] *In re Irasel Sand, LLC*, 569 B.R. 433, 441-42 (citing *In re L.S. Good & Co.*, 8 B.R. 315, 317 (Bankr. N.D.W. Va. 1980)); *see also Quarles v. U.S. Tr.*, 194 B.R. 94, 97 (W.D. Va. 1996).
[123] *Id.* (citing *In re 865 Centennial Ave. Assocs. Ltd. P'ship*, 200 B.R. 800, 809 (Bankr. D.N.J. 1996)).
[124] ECF No. 89 at 13.
[125] ECF No. 89 at 3.
[126] *See Amended Schedules* at ECF No. 111 at 16.

Real Property at $600,000.00.[127] In January 2025, Debtor's cash on hand for was negative $10,305.77[128] and net cash flow was $515.90.[129]

Based on the evidence, the Court finds that Debtor's business prospects are tenuous at best and simply do not justify a continued attempt to reorganize. Speculative projected earnings over the life of the Amended Plan cannot alone bear the weight of the "reasonable likelihood of rehabilitation" requirement. Like *Irasel Sand*, Debtor cannot "be put back in good condition."[130] The Court cannot find any reasonable likelihood of rehabilitation.

Based on the foregoing, the Court finds that cause exists to convert or dismiss the Debtor's case under § 1112(b)(4)(A).

### 2. *The Court finds that dismissal is preferable to conversion.*

The Court finds conversion and appointment of a Chapter 7 trustee is unnecessary given that Debtor has negative cash flow, limited assets (namely, the Real Property, the Tiny Homes, and the RV), and the matter is primarily a dispute between the Debtor and St. Amas.[131] Indeed, based in part on this lack of assets, Debtor has been unable to propose a confirmable plan and major questions exist regarding feasibility of any potential plan that could be proposed by the Debtor.

Based on the foregoing, the Court finds that Debtor has nothing to reorganize. Furthermore, there are very few assets, if any, for a Chapter 7 trustee to administer and liquidate. The Fifth Circuit has previously held that a bankruptcy court's decision to dismiss a Chapter 11 case under § 1112 was not an abuse of discretion when the debtor lacked sufficient assets to reorganize.[132]

---

[127] *See Amended Schedules* at ECF No. 111 at 6.
[128] *See January 2025 Monthly Operating Report*, ECF No. 114 at 3.
[129] ECF No. 114 at 2.
[130] *In re Irasel Sand, LLC*, 569 B.R. 433, 442 (citing *In re L.S. Good & Co.*, 8 B.R. 315, 317 (Bankr. N.D.W. Va. 1980)).
[131] ECF No. 111 at 6-8.
[132] *Tuli v. U.S. Tr.*, 124 F. App'x 830, 831-32 (5th Cir. 2005) (noting that the bankruptcy court observed that the debtor's schedule listed no bank accounts, cash, real estate, or any other property beyond two assets).

Accordingly, the Court holds that dismissal, rather than conversion, is in the best interest of creditors.

Because cause exists, the Court shall dismiss or convert the case under § 1112(b)(1) unless the debtor (or another party in interest) shows that conversion or dismissal is not appropriate.[133] The next analysis considers whether the Debtor has proven the exception to mandatory conversion or dismissal provided by § 1112(b)(2).

### 3. The Court does not find "unusual circumstances" under § 1112(b)(2) because neither Debtor nor a party in interest provided any evidence of "unusual circumstances."

Once cause is established under § 1112(b)(1), courts have limited discretion and must convert or dismiss a Subchapter V case unless the court finds the exception under § 1112(b)(2) applies.[134] Under § 1112(b)(2), the debtor must first specifically identify and prove unusual circumstances exist that make conversion or dismissal *not* in the best interests of creditors and the estate.[135] Second, the debtor must also establish that there is a reasonable likelihood that a plan will be confirmed within the timeframes in §§ 1121(e) and 1129(e), or if those sections do not apply, within a reasonable period.[136] Finally, the debtor must also establish that the grounds for conversion or dismissal include an act or omission of the debtor *other than under paragraph (4)(A)* such that (1) there exists a reasonable justification for the act or omission; and (2) the act or omission will be cured within a reasonable period fixed by the court.[137]

Neither Debtor nor any other party in interest presented evidence to demonstrate unusual circumstances.[138] At the Hearing, Debtor's counsel asserted that unusual circumstances included

---

[133] 11 U.S.C. § 1112(b)(2).

[134] *In re United Furniture Indus., Inc.*, No. 22-13422-SDM, 2023 WL 1081256, at *9 n.10 (Bankr. N.D. Miss. 2023).

[135] *See* 11 U.S.C. § 1112(b)(2).

[136] 11 U.S.C. § 1112(b)(2)(A).

[137] 11 U.S.C. § 1112(b)(2)(B).

[138] *See In re Turkey Leg Hut & Co. LLC*, 665 B.R. 129, 142.

the removal and transfer of the Adversary Proceeding, and Debtor's delayed ability to raise issues on the St. Amas' claim. Debtor also alluded to the significant amount of animosity between Debtor and the St. Amas. Debtor suggested that confirmation of the plan was close and requested that the Court wait to see the outcome of confirmation or the Adversary Proceeding. Debtor argued that it and/or its principals had spent substantial funds trying to rehabilitate the Real Property.

However, the Court finds that the issues raised by Debtor are not "unusual circumstances." These are issues common in most Chapter 11 cases. To define the term "unusual circumstances" so broadly would make virtually every case subject to the § 1112(b)(2) exception, such that the exception itself would swallow the remainder of the statute. The Court declines to find that such routine Chapter 11 matters raised by Debtor constitute unusual circumstances. The Court finds that Debtor has not satisfied its burden to show unusual circumstances.

Not only has Debtor failed to demonstrate unusual circumstances, but Debtor has also failed to prove the other requirements under the § 1112(b)(2) exception. As outlined above, the § 1112(b)(2) exception requires the debtor to:

1) specifically identify and prove unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate;

2) prove that there is a reasonable likelihood that a plan will be confirmed within a reasonable time;

3) prove that the alleged "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate under § 1112(b)(4)(A);

4) prove that there is reasonable justification or excuse for a debtor's act or omission that constitutes cause; and

5) prove that the act or omission constituting cause can be cured within a reasonable time.[139]

---

[139] *In re Baribeau*, 603 B.R. 797, 802 (citing *In re Delta AG Grp., LLC*, 596 B.R. 186, 197).

21

Under the first requirement, the Court finds that the Debtor did not identify unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate. Rather, the evidence indicates that dismissal is in the best interests of the primary creditor—the St. Amas—who can now proceed in the State Court Lawsuit to foreclose upon the Real Property. Under the second requirement, the Court finds that Debtor failed to prove that there is a reasonable likelihood that a plan would be confirmed within a reasonable time. Instead, Debtor filed an "unconfirmable" Amended Plan which failed to include the Tiny Homes or the RV in the liquidation analysis.[140] Under the third requirement, Debtor cannot prove that the alleged "cause" is not under § 1112(b)(4)(A), given the Court's prior finding regarding the continuing losses, and as discussed in more detail below. Under the fourth requirement, Debtor provided no proof of a reasonable justification or excuse for the Debtor's act and omissions. Indeed, the Debtor mentioned no act or omission whatsoever. Under the fifth requirement, Debtor cannot prove that an act or omission could be cured within a reasonable time, as no act or omission was discussed. Thus, Debtor failed to satisfy its burden regarding application of the § 1112(b)(2) exception.

This Court further notes that Chief Judge Craig Gargotta of the Western District of Texas Bankruptcy Court has held that the Bankruptcy Code's plain language demonstrates that when a case is converted for cause under § 1112(b)(4)(A), as a matter of law, a debtor cannot prevail on a § 1112(b)(2) exception argument.[141] Indeed, Chief Judge Gargotta determined that when cause existed under § 1112(b)(4)(A), the debtor could not reverse conversion of a case even if the debtor were able to offer evidence of unusual circumstances.[142] This Court agrees. Here, both

---

[140] ECF No. 120 at 14.
[141] *In re Baribeau*, 603 B.R. 797, 803.
[142] *Id.*

22

requirements of § 1112(b)(4)(A) are present. The Bankruptcy Code explicitly provides that the act or omission supporting unusual circumstances must be *other than under paragraph (4)(A)*.[143] Therefore, the Court finds that the case would be dismissed even if the Debtor could demonstrate unusual circumstances.

### H. Neither the Original Subchapter V Plan nor the Amended Subchapter V Plan were proposed in good faith.

Lack of good faith constitutes an additional basis for dismissing a bankruptcy case for cause.[144] Since 1898, bankruptcy statutes have incorporated a standard of good faith either literally or by judicial interpretation.[145] Although not expressly enumerated in § 1112(b)(4), bankruptcy courts "routinely" treat dismissal for lack of good faith as "implicitly authorized" per § 1112.[146] The Fifth Circuit recognizes bad faith in Chapter 11 cases as being governed by § 1112(b)(1).[147] Thus, bad faith is a basis for courts to dismiss for cause.[148]

When evaluating the good faith of a Chapter 11 plan, a bankruptcy court should consider all the facts and circumstances surrounding the plan to determine if confirmation will achieve a result consistent with the Bankruptcy Code.[149] Section 1129(a)(3) evinces a good faith requirement that is satisfied when a plan has a reasonable hope of success and is proposed with the legitimate and honest purpose to reorganize.[150]

When evaluating the alleged good faith of a debtor's plan, the Court may also consider:

---

[143] 11 U.S.C. § 1112(b)(2)(B) (emphasis added).

[144] *In re Zamora-Quezada*, 622 B.R. 865, 879 (Bankr. S.D. Tex. 2017).

[145] *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986).

[146] *In re Piazza*, 719 F.3d 1253, 1263 (11th Cir. 2013) (citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 372-74 (2007)).

[147] *In re Karcredit, LLC*, No. 21-30649, 2022 WL 4103265, at *5 (5th Cir. 2022) (citing *In re Krueger*, 812 F.3d 365, 367 (5th Cir. 2016)).

[148] *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (in the § 1129(a)(3) context); *see, e.g., In re Zamora-Quezada*, 622 B.R. 865, 879 (citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373 n.1).

[149] *Ronit, Inc. v. Stemson Corp. (In re Block Skim Deve. Co.-Irving)*, 939 F.2d 289, 292 (5th Cir. 1991).

[150] *Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985).

1) whether the proposed plan promotes a result consistent with the Bankruptcy Code's objectives;

2) whether the proposed plan has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected; and

3) whether the debtor exhibited fundamental fairness in dealing with its creditors.[151]

Under the first consideration, examples of relevant objectives and purposes of the Bankruptcy Code include:

1) allowing the debtor a fresh start;

2) preserving going concerns;

3) maximizing property available to satisfy creditors;

4) discouraging debtor misconduct;

5) expeditious liquidation and distribution of the bankruptcy estate to creditors; and

6) achieving fundamental fairness and justice.[152]

The Court finds that both of the Debtor's proposed plans failed to promote a result consistent with the Bankruptcy Code's objectives. There was substantial evidence presented that the Debtor engaged in misconduct, made misrepresentations, failed to disclose information to the Court and parties in interest, proposed plans with unreasonable projections, abused the bankruptcy process, and did not deal appropriately and in good faith with creditors.[153] Essentially, the Debtor engaged in fundamentally unfair conduct that casts doubt on the basis for the plan and the integrity of the plan process.[154]

### 1. The Original Subchapter V Plan was not proposed in good faith.

The Original Plan does not disclose that Debtor's first allegation of fraud against the St. Amas was only made after the St. Amas posted the Real Property for foreclosure.[155] The Original

---

[151] *In re Trinity Fam. Prac. & Urgent Care PLLC*, 661 B.R. 793, 813 (Bankr. W.D. Tex. 2024) (internal citations omitted).
[152] *Id.* at 814 (internal citations omitted).
[153] *Id.*
[154] *Id.*
[155] ECF No. 94 at 12; *see* ECF No. 68.

Plan fails to disclose that Debtor generates revenues at an inadequate rate to address Debtor's obligations.[156] The Original Plan indicates that Ms. Wells will receive an administrative claim treatment for post-petition financing but does not specify the amount of her future financing.[157] The Liquidation Analysis attached to the Original Plan does not provide a valuation for the Tiny Homes or the RV.[158]

Amidst preparations of St. Amas' counsel and United States Trustee's counsel to meet the objection deadline for the Original Plan, at a status conference for the Adversary Proceeding, Debtor acknowledged through counsel that the Original Plan was not confirmable. The St. Amas allege that this was Debtor's attempt to buy itself "a three-month delay" at the "expense of the other constituents" of the case.[159]

The Court agrees that Debtor's Original Plan presents problems, namely lack of a proper liquidation analysis and misidentification of creditors Oliverio, Robbins, and Sessler.[160] The Original Plan fails to account for the fact that Debtor is operating at a continuing loss and provides no explanation of feasibility.[161] Debtor's conduct indicates that it used bankruptcy purely as a litigation tactic which indicates bad faith.[162]

### 2. The Amended Subchapter V Plan was not proposed in good faith.

Problems persist within the Amended Plan.[163] The Amended Plan reduces the amount available to pay creditors by $91,086.00 and increases the professional fees for Debtor's bankruptcy counsel from $14,275.00 to $30,842.50.[164] Despite Debtor's bankruptcy counsel's

---

[156] ECF No. 94 at 12; *see* ECF No. 68.
[157] ECF No. 94 at 12-13; *see* ECF No. 68.
[158] ECF No. 94 at 13; *see* ECF No. 68.
[159] ECF No. 94 at 21.
[160] ECF No. 68 at 4-5 (not identifying Oliverio or Robbins as secured creditors).
[161] *See* ECF No. 68.
[162] *See In re Zamora-Quezada*, 622 B.R. 865, 887.
[163] *See* ECF No. 89.
[164] ECF No. 94 at 13.

admission that the Original Plan was unconfirmable, no indication is given of a fee write off for that unconfirmable Original Plan.[165] In the Amended Plan, Debtor continues to assert that only Sessler is a secured creditor amongst Oliverio, Robbins, and Sessler.[166] The Amended Plan, like the Original Plan, alleges that the value of Debtor's real estate is $600,000.00, instead of the $1,152,570.00 listed in the Original Schedules.[167]

Given the Debtor's aforementioned false representations of the secured creditor status of Oliverio, Robbins, and Sessler, its failure to disclose the possession of the Tiny Homes and the RV, its failure to accurately or consistently value assets of the estate, and its use of the bankruptcy process as a litigation tactic, the Debtor failed to make a good faith effort to reorganize.[168]

## VIII. <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that (1) cause exists to dismiss the case under § 1112(b)(4)(A); (2) the Debtor has not proven unusual circumstances and the other elements required for the Court to apply the exception under § 1112(b)(2); and (3) the Debtor has acted in bad faith. Based on the foregoing, the Court finds that the case should be dismissed with prejudice for 180 days from the Court's ruling on March 7, 2025.[169] The Court will enter a separate order of dismissal consistent with this memorandum opinion. The Court will also enter a *sua sponte* order dismissing related adversary proceeding 24-01068.

---

[165] ECF No. 94 at 13.
[166] ECF No. 89 at 4-5.
[167] *Compare* ECF No. 89 at 18, *with* ECF No. 39 at 7.
[168] ECF No. 120 at 14.
[169] The dismissal with prejudice expired on September 3, 2025.